IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HADI MEHRSEFAT,<br>Plaintiff,<br><br>v.<br><br>DIRK KEMPTHORNE, Secretary,<br>U.S. DEPARTMENT OF THE INTERIOR,<br>Defendant. | Civil Action No. 1:06CV01060<br><br>Date: August 15, 2006 |

## DECLARATION OF RUTH E. STOKES

I, Ruth E. Stokes, do hereby declare as follows:

1. I have personal knowledge of the facts stated herein.

2. I am the Chief, Planning, Analysis and Budget Office for the U.S. Department of the Interior, Office of Surface Mining Reclamation and Enforcement ("OSM").

3. My current age is 50.

4. I was the selecting official for the position of Economist, GS-5/7, through vacancy announcement OSM-2004-0049. (Exh. 1) I had requested through the Human Resources Specialist, Brenda Garrett-Freeman, that the Economist position be listed at both the GS-5 and GS-7 levels.

5. The certificates for the GS-5 and GS-7 were referred to me by Human Resources Specialist Brenda Garrett-Freeman. The Plaintiff was only listed on the GS-5 certificate. To my knowledge Plaintiff only applied for the GS-5, Economist position. (Exh. 3, page 3).

6. It is my understanding that the scores on the list of eligibles reflect the points they received from their answers to the questions that were a part of the application. (Exh. 7).



7. With respect to the GS-5, Economist position, I was instructed by Ms. Garrett-Freeman that I could interview all of the individuals on the certificate, but must select from the top three individuals first. Ms. Garrett-Freeman informed me of the "rule of three." She explained to me that pursuant to OPM regulations if more than three names were on the certificate, I must select from the first three available names before considering subsequent names. This was also stated on the certificate of eligibles. (Exh. 3, page 1).

8. I conducted interviews of the top three scoring individuals for the GS-5, Economist vacancy on July 8, 2004 and July 9, 2004. The top three applicants were the Plaintiff, Matthew Brigida and Jonathan Hibshman. (Exh. 3, page 3).

9. For each person who interviewed for either the GS-5 or GS-7 Economist position, I had boilerplate questions to ask each candidate. Each candidate was asked two problem-solving questions that were relevant to the work we perform. The questions related to the coal industry and data estimation methodology. I felt the questions would help gauge each candidate's ability to apply economic concepts. (Exh. 8).

10. The GS-5 Economist position is an entry level position with the potential to progress to the GS-12 level. The position required someone who would be working directly with the Senior Economist (Nancy Broderick) to assist in components of pulling together data for various economic analyses and studies. I was looking for a person with skills in collecting and analyzing data. It was important to have someone with at least basic skills to organize the data in electronic format for analysis work.

11. After I conducted the first three interviews from the GS-5 certificate, I selected Matthew Brigida for the position. I felt he was the most qualified person for the position. I was then informed that Mr. Brigida declined the offer to be an Economist.

12. I was then informed by Ms. Garrett-Freeman that I could select from the fourth person on the certificate, Mr. James Tichenor, and proceed with an interview. I was told by Ms. Garrett-Freeman that OPM regulations state I could consider a subsequent name on the certificate once I first selected from the top three candidates (i.e. Matthew Brigida). (Exh. 3, page 2).

13. On July 29, 2004, I interviewed Mr. Tichenor for the Economist position. He had demonstrated ability in data collection and methodology; recent database management experience to organize that data; and knowledge of computer applications that would enable analysis of data. He also had knowledge of the problems in the coal industry as well as experience in data estimation. I was impressed by Mr. Tichenor's qualifications and selected him for the position. Mr. Tichenor subsequently accepted the offer. (Exh. 9).

14. I did not select Plaintiff for the Economist position because I did not think that he was the most qualified person for the position. During the interview, when I asked Plaintiff about his data base experience he only offered his recent experience grading student papers. I felt Plaintiff's experience was very accomplished, but not related to data collection and data base management skills at an entry level.

15. With respect to the Staging Area Applicant Listing from QuickHire (Exh. 2), I did not have access to this list while the hiring process was taking place. To my knowledge this document was used by the Human Resources Specialist to create the certificate that was referred to me in my capacity as selecting official. (Exh. 3, page 3).

16. I did not know the age of the Plaintiff, nor did I know the age of any of the applicants on the list of eligibles for either the GS-5 or GS-7 Economist certificates.

17. The same process was used when interviewing under the GS-7 certificate. I interviewed all four candidates on the certificate because the first candidate was unable to be contacted by phone after six phone calls on various days and times. I first selected John Powers, the third highest scoring person. Mr. Powers declined the offer and at that time pursuant to instruction by Brenda Garrett-Freeman, I then considered the fourth individual on the list. Jennifer Sohns was the fourth highest rated person on the list of eligibles. Ms. Sohns was also offered the position of Economist under the GS-7 certificate, however, she declined. (Exh. 4, page 4).

18. During the EEO investigation into this matter I was interviewed by investigator, Roland Goodman. On March 22, 2005, I was sent an e-mail from Mr. Goodman in which he requested that I review and make necessary corrections, editions and deletions to a draft affidavit. (Exh. 10).

19. From March 22, 2005 through April 8, 2005, I was on leave. I was also out of the office on March 21, 2005, as it was my scheduled day off. When I returned from leave I received and reviewed the draft affidavit and made minor changes as well as elaborated on certain concepts. After I revised the draft affidavit I signed my affidavit on April 14, 2004. (Exh. 9).

Pursuant to 28 U.S.C. § 1746, I hereby declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 15th day of August, 2006.

*Ruth E. Stokes*
Ruth E. Stokes
Chief, Planning, Analysis and Budget Office
Office of Surface Mining